UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLARENCE HILL                                    CIVIL ACTION

VERSUS                                           NO: 11-2786

EXXON MOBIL CORP., ET AL.                        SECTION: R


**ORDER AND REASONS**

Before the Court is defendants' motion to dismiss plaintiff's *Bourgeois I*[1] medical monitoring claim.[2] Because plaintiff does not state a plausible claim under the *Bourgeois I* test, the Court GRANTS defendants' motion.


**I.   BACKGROUND**

Plaintiff Clarence Hill worked at Tuboscope Vetco International's pipe yard from 1972 to 1977. Plaintiff alleges that during this time, the defendants, Exxon Mobil Corporation and Exxon Mobil Oil Corporation (collectively, "Exxon"), Humble Incorporated ("Humble"), Chevron USA, Inc. ("Chevron"), Shell Oil Company ("Shell"), Marathon Oil Company ("Marathon"), OXY USA, Inc. ("OXY"), and BP America Production Company ("BP"), sent their used oilfield production tubes to be cleaned at the

---

[1] *Bourgeois v. A.P. Green Industries, Inc.*, 716 So. 2d 355 (La. 1998).

[2] R. Doc. 50.

Tuboscope facility. Plaintiff contends that these tubes contained naturally occurring radioactive material ("NORM"). Further, plaintiff asserts that the defendants knew about the radioactive material in the oil pipes, yet notified neither plaintiff's employer nor plaintiff himself. Plaintiff alleges that during the cleaning process, he was exposed to dangerously high levels of radiation, and that as a result of this exposure, he is at an increased risk of developing cancer.

On February 18, 2011, plaintiff filed a complaint asserting claims of negligence and strict liability under Louisiana law. Plaintiff sought damages for increased risk of cancer, fear of cancer, and medical monitoring for early detection of cancer. Defendants removed the case to federal court.[3] Chevron then moved to dismiss plaintiff's medical monitoring claim,[4] and Marathon, BP, and OXY USA Inc., joined Chevron's motion.[5] On February 2, 2012, the Court granted defendants' motions to dismiss plaintiff's medical monitoring claim and afforded plaintiff an opportunity to amend his complaint.[6] Plaintiff did so amend,[7] and now, all defendants move the Court to dismiss plaintiff's claims

---

[3] R. Doc. 1.

[4] R. Doc. 7.

[5] R. Docs. 8, 9, 11.

[6] R. Doc. 34.

[7] R. Doc. 40.

for medical monitoring damages under *Bourgeois v. A.P. Green Industries, Inc.,* 716 So. 2d 355 (La. 1998) (*Bourgeois I*).[8] Plaintiff opposes the motion.[9]

**II. STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the

---

[8] R. Doc. 50.

[9] R. Doc. 53.

3

elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

## III. DISCUSSION

In *Bourgeois I*, the Louisiana Supreme Court held that medical monitoring costs are compensable damages under Louisiana Civil Code Article 2315, provided that the plaintiff satisfies seven criteria. *Bourgeois I*, 716 So. 2d at 360. These criteria are: (1) a significant exposure to a proven hazardous substance; (2) as a proximate result of this exposure, plaintiff suffers a significant increased risk of contracting a serious latent disease; (3) plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he or she not been exposed and (b) the chances of members of the public at large of developing the disease; (4) a monitoring procedure exists that makes the early detection of the

disease possible; (5) the monitoring procedure has been prescribed by a qualified physician and is reasonably necessary according to contemporary scientific principles; (6) the prescribed monitoring regime is different from that typically recommended in the absence of exposure; and (7) there is some demonstrated clinical value in the early detection and diagnosis of the disease. *Id.* at 360-61.

In the wake of this decision, the Louisiana legislature, through Act 989 of 1999, amended Article 2315 to exclude future medical monitoring for asymptomatic plaintiffs from the statute's definition of compensable damages. La. C.C. art. 2315(B) ("Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease."); *see also Bonnette v. Conoco, Inc.*, 837 So. 2d 1219, 1230, n.6 (La. 2003) (explaining that "the amendment effectively eliminated medical monitoring as a compensable item of damage in the absence of a manifest physical or mental injury or disease"). The amended version of the statute became effective on July 9, 1999.

Then, in *Bourgeois II*, the Louisiana Supreme Court held that Act 989 could not apply retroactively to divest a cause of action that accrued before the effective date of the Act. *Bourgeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1260 (La. 2001)

(*Bourgeois II*). Accordingly, to state a claim for medical monitoring damages following the amendment to Article 2315 and the Louisiana Supreme Court's decision in *Bourgeois II*, a plaintiff must either (1) satisfy Louisiana Civil Code Article 2315(B) which requires that the monitoring relate to a manifest physical or mental injury or disease; or (2) demonstrate that the seven factors forming the *Bourgeois I* test converged before July 9, 1999. *See* La. C.C. art. 2315(B); *Crooks v. Metro. Life Ins. Co.*, 785 So. 2d 810, 812 ("[F]or the *Bourgeois II* holding to apply, the seven factors forming the *Bourgeois I* test must have converged prior to July 9, 1999.").

Here, defendants have not moved for dismissal of plaintiff's claim for medical monitoring damages under Article 2315; indeed, they recognize that plaintiff has stated a claim for relief sufficient to survive a 12(b)(6) motion to dismiss. Rather, defendants move for dismissal of plaintiff's claim for medical monitoring damages under *Bourgeois I* only. They argue that plaintiff has failed to allege that a qualified physician has prescribed a medical monitoring procedure - the fifth criterion required for plaintiff's monitoring costs to constitute compensable damages under *Bourgeois I*. Plaintiff admits that he had not been prescribed a medical monitoring program as of July 9, 1999, but argues that defendants must not reap the benefits of the more restrictive Article 2315(B) that took effect *after*

6

plaintiff had suffered significant toxic exposure and *after* defendants had begun concealing that exposure from him.

In *Bourgeois II*, the Louisiana Supreme Court held that the asymptomatic plaintiffs in the case had a "vested right to assert their causes of action for medical monitoring if those rights accrued prior to July 9, 1999." 783 So. 2d at 1260. The Court was clear that a "cause of action, for purposes of the peremptory exception, means the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant." *Id.* (internal quotation marks omitted). The Court held that the "existence of the seven factors enunciated in *Bourgeois I* are the 'operative facts which give rise to the plaintiff[s'] right to judicially assert the action against the defendant.'" *Id.* Thus, plaintiffs' causes of action "accrued, and they had a right to sue for medical monitoring damages, upon the convergence of [those] seven factors[.]" *Id.* Here, plaintiff does not allege that he was ever prescribed a monitoring procedure. Further, he alleges in the present tense several other facts that form the basis of his *Bourgeois I* claim,[10] but *Bourgeois II* requires these operative facts to have arisen *before* July 9, 1999

---

[10] For example, Hill alleges that as a result of his exposure, he "*is* at a significantly increased risk for the development of a latent disease"; that his risk of developing such disease "*is* greater than if he had never been exposed" to the harmful chemicals; and that the "monitoring protocol *is* medically advisable" (emphasis added in each quotation).

7

for plaintiff's cause of action to have vested. Because he has failed to plead facts indicating a cause of action that vested before July 9, 1999, the legislative change to Article 2315 did not strip him of a property right to which he was otherwise entitled.

Plaintiff's reliance upon *Anderson v. Avondale Indus., Inc.*, 798 So. 2d 93 (La. 2001) is misplaced. The issue presented in *Anderson* was whether La. C.C. art. 2315.3, which allowed recovery of punitive damages, applied to a wrongful death action in which the defendants' conduct giving rise to the damages occurred before enactment of the statute, and plaintiffs' cause of action accrued after enactment. *Id.* at 97. The Louisiana Supreme Court held that a court could not award punitive damages under a statute that was not in effect at the time of defendants' conduct. *Anderson* was not, however, concerned with the timing at which a cause of action accrues, much less a cause of action for medical monitoring damages, specifically. Indeed, accrual of plaintiffs' cause of action was not even at issue in that case. *Bourgeois II* specifically articulates when a cause of action for medical monitoring damages accrues for an asymptomatic plaintiff, and identifies the operative facts necessary for this accrual to occur. Given this specific ruling on the specific issue of concern in this case, the Court finds *Anderson* inapposite.

Plaintiff's additional assertion that the doctrine of *contra*

8

*non valentem* should work to suspend the accrual of his medical monitoring claim is simply without merit. The doctrine provides a jurisprudential exception to prescription in order to extend the time during which a plaintiff may sue on an accrued cause of action. *Owens v. Martin*, 449 So. 2d 448, 451 (La. 1984) ("[T]he jurisprudence has [] recognized the doctrine of *contra non valentem* as a limited exception where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues.") (internal quotation marks omitted). *Contra non valentem* does not, however, affect when a cause of action accrues. *See Austin v. Abney Mills*, 824 So. 2d 1137, 1150 (La. 2002) ("*Contra non valentem* applies to suspend the running of prescription on a cause of action *already accrued*.") (emphasis added). The Court must take Louisiana law as it finds it and cannot create exceptions to Louisiana's accrual rules that the state's law does not provide. *See, e.g., Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995) (en banc) ("We have long followed the principle that we will not create innovative theories of recovery or defense under local law, but will rather merely apply it as it currently exists.") (internal quotations omitted); 19 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 4507 (2d ed.) ("Nor is it the function of the federal court to expand the existing scope of state law.").

Finally, to the extent that plaintiff is concerned about the

viability of his remedy under 2315(B), the Court's construction of the *Bourgeois* cases will not impair his claim for medical monitoring damages if indeed he is symptomatic and his claim is not prescribed. The *Bourgeois* cases involved plaintiffs seeking "postexposure, presymptom" medical monitoring remedies only.[11] Neither case changed the law with respect to a symptomatic plaintiff's opportunity for recovery.

**IV. CONCLUSION**

Because plaintiff does not state a plausible medical monitoring claim under *Bourgeois I*, the Court GRANTS defendants' motion to dismiss this claim.

New Orleans, Louisiana, this 18th day of May, 2012.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

[11] *Bourgeois I*, 716 So. 2d at 357 n.2. Indeed, the defendants in *Bourgeois I* did "not dispute the viability of a claim for future medical monitoring expenses by those plaintiffs *already diagnosed* with an exposure related disease." *Id.* (emphasis added).