UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CLARENCE HILL                                CIVIL ACTION

VERSUS                                       NO: 11-2786

EXXON MOBIL CORPORATION, ET                  SECTION: R
AL.

### ORDER AND REASONS

Defendants move for summary judgment on the issue of individual causation. For the following reasons, the Court grants defendants' motion.

**I.   BACKGROUND**

At Tuboscope Vetco International, LP, Clarence Hill handled pipes that became clogged during oil production. The build up in the pipes, known as scale, can be radioactive, and Clarence Hill alleges that he was exposed to radioactive scale known as Normally Occurring Radioactive Material ("NORM") when he worked for Tuboscope. This radioactive exposure, Hill originally alleged, caused him to have a heart attack, places him at an increased risk of cancer, and gives him a fear of developing cancer. Hill no longer alleges that his exposure caused him to have a heart attack. Hill's alleged exposure to NORM took place from 1972 to 1977.[1] Hill has sued two oil companies, Shell Oil

---

[1]   R. Doc. 1-1 at 3.

Co. and Chevron U.S.A. Inc., that had their pipes treated by Tuboscope. Shell and Chevron now move for summary judgment on the issue of individual causation.[2]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting Wright & Miller, *Fed. Prac. and Proc. Civ.* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed

---

[2] R. Doc. 151.

verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 332).

**III. DISCUSSION**

**A.    Hill Must Prove Causation**

Hill alleges that he was exposed to radiation while working at Tuboscope and that this radiation caused him to have an increased risk of cancer and a fear of cancer. At trial, Hill must prove that defendants' conduct was the cause-in-fact of these injuries. *Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1088 (La. 2009). More specifically, Hill must prove (1) that he was exposed to radiation attributable to each of the defendants and (2) that each defendant's conduct substantially caused his injuries. *Id.; Quick v. Murphy Oil Co.*, 643 So. 2d 1291, 1294-95 (La. Ct. App. 1990) (noting that in cases with multiple defendants, courts apply the "substantial factor inquiry"). Defendants' motion for summary judgment argues that Hill has not provided sufficient evidence that he was exposed to radiation attributable to them.

**B.    Hill Does Not Meet His Evidentiary Burden**

As a matter of background, it is undisputed that new pipe does not have scale, and not all used pipe has scale. Further, not all used pipe with scale contains NORM.[3] In order to prove his exposure, then, Hill must show that he handled a specific category of defendants' pipes, namely, used pipes with scale containing NORM.

---

[3]    R. Doc. 151-12 at 2.

4

Hill offers no direct evidence that he was exposed to defendants' pipes with scale containing NORM. Tuboscope did not keep records of radioactivity at its pipe yard from 1972-1977, nor did it keep track of which oil companies' pipes contained radioactive scale.[4] Instead, Hill bases his claim on circumstantial evidence, which is the "evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred." *Rando*, 16 So. 3d at 1090 ("Use of circumstantial evidence and the deductions and inferences arising therefrom is a common process for establishing liability in negligence cases.").

Hill supplies enough circumstantial evidence that he worked on used pipe from Shell and Chevron at Tuboscope. He provides records showing that Chevron and Shell sent used pipe to the yard where he worked during his time at Tuboscope.[5] Hill also stated that he worked on many oil companies' pipes, including Shell's,[6] and that he primarily handled used pipe containing "rust and scale."[7] But, as previously stated, not all used pipes contain scale, and not all used pipes containing scale have NORM. Hill's claim fails because he has not provided enough evidence to show

---

[4]   R. Doc. 151-11 at 6; R. Doc. 151-4 at 2.

[5]   R. Doc. 198-6 at 1.

[6]   R. Doc. 198-17 at 2.

[7]   *Id.* at 3.

that some of the defendants' used pipes that he handled had scale containing NORM.

Hill attempts to establish that he handled defendants' used pipes containing scale with NORM through a series of documents. First, Hill provides a 1971 report showing the presence of Radon 222 in natural gas and indicating that its presence was "industry wide."[8] But this study, which mentioned several states, did not include Louisiana.[9] Second, Hill provides a report that surveyed 49 oil and gas fields in Louisiana and found 26 to have elevated radiation.[10] This survey shows only that about half of the selected oil and gas fields had elevated radiation, but it does not connect any of the fields in the survey to Chevron, and it identifies only one elevated Shell site in White Castle, Louisiana. The survey does not show that any pipe from contaminated fields was sent to Tuboscope. Third, Hill shows that in 1973, Shell had found "radioactive scale" in one well at the same White Castle location,[11] but again Hill does not show that any pipes from White Castle were sent to Tuboscope. Fourth, Hill alleges that "tubulars," like those cleaned at Tuboscope, were

---

[8]   R. Doc. 198-5 at 1.

[9]   *Id.*

[10]  R. Doc. 198-11 at 16.

[11]  R. Doc. 198-13 at 1.

"the most likely source of [] high-activity scales."[12] Finally, Hill provides evidence that in 1993 the Tuboscope pipe yard was found to have elevated radiation levels and that NORM was removed from the yard in 1996.[13]

Hill's evidence requires an impermissible chain of speculation to find that he was exposed to radiation in defendants' pipes. Hill's own expert concedes the NORM found at Tuboscope in 1996 does not prove that it was present between 1972-1977 or that Shell's and Chevron's pipes contained NORM.[14] Plaintiff's expert acknowledged that he could not conclude that any of the NORM found in the 1996-1997 survey was present at Tuboscope between 1972 and 1977 and that he could not "know when th[at] radioactive material came into existence."[15]

The study noting that the presence of radon in natural gas was "industry wide," the survey showing that 26 of the 49 oil and gas fields of unidentified owners had radiation, and the finding that a Shell White Castle well had radioactive scale, are too attenuated to be probative of whether defendants sent pipes to Tuboscope that had NORM. To find that Hill was exposed to radiation in Shell's pipes, the trier of fact would need to

---

[12]   R. Doc. 198-14 at 3.

[13]   R. Doc. 198-7.

[14]   R. Doc. 151-11 at 8-10.

[15]   *Id.* at 9-10.

assume that Shell sent used pipes from the contaminated White Castle site or some other well with radiation to Tuboscope, that some of these used pipes contained scale, that some of these used pipes had scale containing NORM, and that Hill was exposed to those particular pipes. As to Chevron, a trier of fact would need to assume that because one of Shell's wells had radioactive scale and that about half of the surveyed fields (none of which was identified as Chevron's) had increased radiation, that some of Chevron's wells had radioactive scale, that Chevron sent used pipes containing scale with NORM from those wells to Tuboscope, and that Hill was exposed to these pipes.

      The record is devoid of evidence that the pipes that Chevron and Shell sent to Tuboscope had radiation. Hill's argument "does not rise above the level of mere speculation and conjecture" necessary to defeat summary judgment. *Kelly v. Labouisse*, 364 Fed. App'x 895, 896 (5th Cir. 2010) (per curium). Plaintiff's burden of proof in long-latency disease cases is "not relaxed or reduced because of the degree of difficulty that might ensue in proving the contribution fo each of the defendant's product to the plaintiff's injury." *Lucas v. Hopeman Bros.*, 60 So. 3d 690, 700-02 (La. Ct. App. 2011) (granting summary judgment when plaintiff provided evidence that placed him in contact with defendant's product but no evidence that these products exposed him to asbestos, because there was no evidence "linking decedent's alleged asbestos exposure to any insulation work

performed on [defendant's] boilers"). Hill has not met his evidentiary burden. *See, e.g.*, *Thibodeaux v. Asbestos Corp. Ltd.*, 976 So. 2d 859, 867 (La. Ct. App. 2008) (granting summary judgment when plaintiffs did not supply any evidence that asbestos was used at plaintiff's work place while she was there or that she was actually exposed to asbestos).

Plaintiff's reliance on *Borel v. Fidreboard Paper Products Corporation*, is misplaced because in *Borel* it was undisputed that Borel contracted asbestosis from inhaling asbestos dust and that he was exposed to the products of all of the defendants, which contained asbestos. *Borel v. Fidreboard Paper Prods. Corp.*, 493 F.2d 1076, 1085, 1094 (5th Cir. 1973). Unlike in *Borel*, where plaintiff's exposure to asbestos was not in dispute, to date, Hill's only manifested injury was his 2001 heart attack at age 54, a condition plaintiff no longer alleges was caused by radiation exposure. Further, it is disputed whether defendants' pipes contained NORM.

Hill's claim fails to provide sufficient evidence on an essential element of his claim. Accordingly, summary judgment is granted.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED.

New Orleans, Louisiana, this 2nd day of January, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

9